**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ERIC COOMER, Ph.D.,

      Plaintiff - Appellee,

v.

MAKE YOUR LIFE EPIC LLC, d/b/a
ThriveTime Show; CLAYTON
THOMAS CLARK,

      Defendants - Appellants.

No. 23-1109

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:21-CV-03440-WJM-KLM)**
_____

Thomas B. Quinn, Gordon Rees Scully Mansukhani LLP, Denver, Colorado
(John R. Mann and Melissa A. Weise, Gordon Rees Scully Mansukhani LLP,
with him on the briefs), for Defendants-Appellants.

Zachary H. Bowman, Cain & Skarnulis PLLC, Austin, Texas (Charles J. Cain,
Bradley A. Kloewer, and David E. Jennings, Cain & Skarnulis PLLC, Salida,
Colorado, with him on the brief), for Plaintiffs-Appellees.

_____

Before **HARTZ**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

      Soon after the 2020 presidential election, Make Your Life Epic LLC

(doing business as ThriveTime Show) and its podcast host, Clayton Clark

(collectively, "Epic"), began publishing and repeating false claims about Dr. Eric Coomer, the then-director of product strategy and security at Dominion Voting Systems (an election-tech company).[1] Epic claimed that Dr. Coomer was a member of "Antifa" and had rigged the election in favor of Joseph R. Biden and against Donald J. Trump. App. vol. I, at 10 ¶ 5.

Dr. Coomer filed this diversity action in the District of Colorado against Epic asserting claims for defamation, intentional infliction of emotional distress, and civil conspiracy. Epic filed a "special motion to dismiss" the lawsuit under the provisions of Colorado's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. Colo. Rev. Stat. § 13-20-1101. The district court denied this motion after determining that Dr. Coomer would likely prevail on the merits of all three of his claims.

Epic appealed, asking us to reverse the district court's order. In response, Dr. Coomer moved to dismiss Epic's appeal for lack of appellate jurisdiction. We hold that the proposed interlocutory appeal falls outside of the collateral-order doctrine, so we dismiss Epic's appeal for lack of appellate jurisdiction.

## BACKGROUND

### I.    Factual Background

Days after Joseph Biden defeated Donald Trump in the 2020 presidential election, Joe Oltmann began publicly accusing Dr. Coomer of rigging the

---

[1] We take the facts as the district court applied them for the limited purpose of determining our appellate jurisdiction.

election in favor of Biden and against Trump. Oltmann claimed—initially on his own podcast and then on other forums—that in September 2020 he had "infiltrated an Antifa conference call" and overheard someone referred to as "Eric" and as the "Dominion guy" state: "Don't worry about the election, Trump is not gonna win. I made f-ing sure of that. Hahahaha." App. vol. I, at 23–24 ¶ 29. Oltmann claimed that he had later identified "Eric" as Dr. Coomer, the then-director of product strategy and security at Dominion Voting Systems. *Id.* at 24.

Oltmann repeated these accusations about Dr. Coomer on Epic's podcast, the ThriveTime Show. Oltmann appeared as Clark's guest on the ThriveTime Show in December 2020, June 2021, and October 2021. During the December podcast episode, Clark introduced Oltmann as "a whistleblower about Eric Coomer" and stated: "He joins us today to expose the truth, that the Director of Strategy and Security for Dominion Voting Systems is in fact a member of Antifa. Yes, I repeat, the Director of Strategy, I can't make this up, the Director of Security for Dominion Voting Systems is in fact a member of Antifa." *Id.* at 34 ¶ 48, 35 ¶ 50. Epic published the December episode with this title: "Exposing the Treasonous Eric Coomer[,] the ANTIFA Member and the Director of Strategy and Security at DOMINION Voting Systems." *Id.* at 9 ¶ 3. The episode's accompanying "Show Notes" listed several questions including these: "What does every American need to know about Eric Coomer and DOMINION?"; "How did you first discover the ANTIFA loving nature of Eric

Coomer?"; "What happened to the VOTING systems in Georgia, and what was Eric Coomer's role in this?"; and "What do we do with people that commit treason, sedition and subversive activities?" *Id.* at 40–41 ¶ 57. The final question included a link to a government website identifying the punishment for treason as death. The June and October podcast episodes kept to the same script: Clark introduced Oltmann to speak about Dr. Coomer and the 2020 election, and Oltmann repeated his false claims.

Clark also invited Oltmann to be a featured speaker at Epic's live ReAwaken America Tour events in Anaheim, California; Grand Rapids, Michigan; Colorado Springs, Colorado; San Antonio, Texas; and Dallas, Texas.[2] At these events, which Epic also broadcast online, Oltmann again proclaimed that "[t]he election on November 3, 2020, was stolen" and blamed Dr. Coomer. *Id.* at 47 ¶ 72.

Dr. Coomer alleges that by publishing and repeating Oltmann's false claims, Epic cost him his job, damaged his nationwide reputation, engendered near-daily death threats, and resulted in his being clinically diagnosed with anxiety and depression.

## II.    Procedural Background

---

[2] When Dr. Coomer filed his lawsuit, Epic's website featured Oltmann as an invited speaker at upcoming ReAwaken America Tour events in Phoenix, Arizona; Canton, Ohio; Tulsa, Oklahoma; San Diego, California; and Redmond, Oregon.

Dr. Coomer filed suit in the District of Colorado against Epic for defamation, intentional infliction of emotional distress, and civil conspiracy.[3] Soon after, Epic filed a special motion to dismiss Dr. Coomer's claims as provided for in Colorado's anti-SLAPP statute.

In enacting its anti-SLAPP statute, the Colorado legislature had two aims: to "safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government . . . and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." Colo. Rev. Stat. § 13-20-1101(1)(b); *see also Salazar v. Pub. Tr. Inst.*, 522 P.3d 242, 246 (Colo. App. 2022). To balance these competing interests, the statute permits a defendant to file a "special motion to dismiss" (also called an "anti-SLAPP motion") so that the district court can "make an early assessment about the merits" of the lawsuit. *Salazar*, 522 P.3d at 246–47 (citing § 13-20-1101(3)(a)).

In making this assessment, courts employ the two-step burden-shifting process given by the statute. *L.L.S. v. S.A.P.*, 523 P.3d 1280, 1285 (Colo. App. 2022). At the first step, the defendant has the burden to make a "threshold showing that the conduct underlying the plaintiff's claim falls within the scope of the anti-SLAPP statute—that is, that the claim arises from an act 'in

---

[3] Dr. Coomer has filed similar lawsuits against local and national individuals and entities who he asserts have similarly "spread and profited off of the dissemination of Oltmann's lies." App. vol. I, at 10 ¶ 6.

furtherance of the defendant's right of petition or free speech in connection with a public issue.'" *Id.* (quoting § 13-20-1101(3)(a)) (cleaned up). At the second step, assuming the defendant has met its initial burden, the burden shifts to the plaintiff to "establish[]" a "reasonable likelihood [of] prevail[ing] on the claim." § 13-20-1101(3)(a); *see also L.L.S.*, 523 P.3d at 1285–86. There, courts "consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." § 13-20-1101(3)(b); *see also L.L.S.*, 523 P.3d at 1285–86; *Salazar*, 522 P.3d at 248.

Employing this framework, the district court determined at step one that the conduct described in Dr. Coomer's claims arose from Epic's "right of petition or free speech . . . in connection with a public issue." *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1199–1200 (D. Colo. 2023) (quoting § 13-20-1101(3)(a)). Then at step two, after reviewing the pleadings, the affidavits, and "extensive evidence," the court concluded that Dr. Coomer was likely to prevail on the merits of his claims. *Id.* at 1204–07. That being so, the court denied Epic's special motion to dismiss. *Id.* at 1207–08. Discovery remained ongoing in the district court, despite Epic's request to stay it. *See Coomer v. Make Your Life Epic LLC*, No. 21-cv-3440, 2023 WL 3178036, at *5 (D. Colo. May 1, 2023) (denying Epic's motion to stay pending appeal). Epic now appeals the order denying the special motion to dismiss.[4]

---

[4] Epic never sought certification under 28 U.S.C. § 1292(b).

## DISCUSSION

On appeal, Epic contends that the district court erred in ruling that Dr. Coomer had met his burden to show a reasonable likelihood of prevailing on the merits of his claims. Dr. Coomer has moved to dismiss Epic's appeal on the ground that we lack appellate jurisdiction under 28 U.S.C. § 1291. Epic counters that this court has appellate jurisdiction under the collateral-order doctrine. For the reasons given below, we reject Epic's argument and dismiss this appeal for lack of appellate jurisdiction.

## I.    The Collateral-Order Doctrine

Congress has generally limited our appellate jurisdiction to "final decisions of the district courts." 28 U.S.C. § 1291. A decision is "not final, ordinarily, unless it ends the litigation on the merits and leaves nothing for the [district] court to do but execute the judgment." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999) (cleaned up).

One exception to this rule is the collateral-order doctrine, which provides appellate jurisdiction over "a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (cleaned up). Under this doctrine, an interlocutory district-court order may be appealed if three conditions are met: (1) the order is "conclusive" on the question it decides, (2) the order "resolve[s] important questions separate from the merits," and (3) the order is "effectively unreviewable" if not presented in an interlocutory appeal. *Id.*

7

(citation omitted) (restating the three requirements announced in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949)). But this test is "stringent." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).

We are mindful of the Supreme Court's repeated admonitions that the class of collaterally appealable orders must remain "narrow and selective in its membership." *Mohawk Indus.*, 558 U.S. at 113 (citation omitted); *see also, e.g.*, *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (describing the class as "small"); *Will v. Hallock*, 546 U.S. 345, 350 (2006) (depicting the class as "modest"). And we approach this appeal knowing that immediate appeals under the collateral-order doctrine are "the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995).

The doctrine's rigidity reflects "a healthy respect for the virtues of the final-judgment rule." *Mohawk Indus.*, 558 U.S. at 106. Allowing too many "piecemeal, prejudgment appeals . . . encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation," *id.* (quotations omitted); "threaten[s] those proceedings with delay, adding costs and diminishing coherence," *Johnson*, 515 U.S. at 309; and "risks additional, and unnecessary, appellate court work," *id.* (collecting cases).

For "fact-related dispute[s]," the Supreme Court advises us that the cost of disrupting the ordinary course of litigation will likely overpower any public-interest concerns. *Id.* at 307, 315–16. This is so because "the close connection

8

between" the district court's fact-related determination "and the factual matter that will likely surface at trial means that the appellate court . . . may well be faced with approximately the same factual issue again, after trial, with just enough change (brought about by the trial testimony) to require it, once again, to canvass the record." *Id.* at 316–17. Thus, "an interlocutory appeal concerning [a factual] issue" is an "unwise use of appellate courts' time" because it forces courts to "decide in the context of a less developed record, an issue very similar to one they may well decide anyway later, on a record that will permit a better decision." *Id.* at 317.

Further, we must "decide appealability for categories of orders rather than individual orders." *Id.* at 315. Epic contends that the category at issue— orders denying special motions to dismiss under Colorado's anti-SLAPP statute—satisfies all three of the collateral-order doctrine's requirements.[5] Dr. Coomer concedes that the district court's order satisfies the first and third requirements of the collateral-order doctrine. So our jurisdiction to hear Epic's

---

[5] Dr. Coomer did not raise an *Erie* challenge to the procedural framework of Colorado's anti-SLAPP statute. So we consider that issue waived and do not decide it. We do note that plaintiffs have prevailed on this ground elsewhere. *See Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349–51 (11th Cir. 2018) (determining that the motion-to-strike provision of Georgia's anti-SLAPP statute does not apply in federal court); *Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (declining to apply the District of Columbia's anti-SLAPP law's special-motion-to-dismiss provision); *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 732 (7th Cir. 2015) (deciding that Washington's anti-SLAPP law, as a whole, is inapplicable in federal court).

appeal turns on the collateral-order doctrine's second requirement—

separability: whether the denial of an anti-SLAPP special motion to dismiss

"resolve[s] an important issue *completely separate* from the merits of the

action." *Will*, 546 U.S. at 349 (emphasis added) (citation omitted).

## II.    The Separability Requirement

For an issue to be completely separate from the merits, it must be

"significantly different from the fact-related legal issues that likely underlie the

plaintiff's claim on the merits." *Johnson*, 515 U.S. at 314. Issues that are

"completely separate from the merits" oftentimes include these: qualified

immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), absolute immunity,

*Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982), and Eleventh Amendment

immunity, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506

U.S. 139, 144–45 (1993). These varieties of immunity are "in part an

entitlement not to be forced to litigate the consequences of official conduct."

*Mitchell*, 472 U.S. at 525–28. And generally, an official-immunity

determination is "conceptually distinct from the merits of the plaintiff's claim"

because an appellate court "need not consider the correctness of the plaintiff's

version of the facts, nor even determine whether the plaintiff's allegations

actually state a claim." *Id.* at 527–28; *see also Puerto Rico Aqueduct*, 506 U.S.

at 142–47 (noting that immediate appeals of absolute- and Eleventh

Amendment-immunity determinations—both of which turn on the legal status

of the defendant and "have no bearing on the merits of the underlying action"—
satisfy the collateral-order doctrine).

Epic insists that Colorado's anti-SLAPP statute provides a form of
immunity: preventing defendants from being "forced to defend against a
meritless claim." Resp. to Mot. to Dismiss Appeal at 12 (quoting *Batzel v.
Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003)). As Epic sees it, if Colorado's anti-
SLAPP statute provides an immunity from trial, then it follows that denials of
such orders decide an issue distinct from the merits. So, they posit, orders
denying anti-SLAPP motions are immediately appealable for the same reasons
that orders denying qualified or absolute immunity are. We disagree.

## A.    Fact-related immunity orders are not completely separate from the merits.

To start, we question Epic's premise that Colorado's anti-SLAPP statute
provides defendants an immunity from trial. True, some courts have treated
other states' anti-SLAPP statutes as providing a semblance of immunity. *See,
e.g.*, *Batzel*, 333 F.3d at 1025 (California anti-SLAPP law); *Henry v. Lake
Charles Am. Press, L.L.C.*, 566 F.3d 164, at 175–76 (5th Cir. 2009) (Louisiana
anti-SLAPP law). But no court has interpreted Colorado's anti-SLAPP statute
in this way. In fact, Colorado courts have consistently described Colorado's
anti-SLAPP statute as merely providing defendants with procedural
expediency: the opportunity to have the court make an "early assessment about

the merits" of the lawsuit. *Rosenblum v. Budd*, 538 P.3d 354, 362 (Colo. App. 2023) (quoting *Salazar*, 522 P.3d at 246).

Another fault in Epic's argument is the assumption that a right not to stand trial automatically satisfies the collateral-order doctrine. As the Supreme Court has made clear, such a "generalization is too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters." *Will*, 546 U.S. at 351. Indeed, every case in which the Court has determined that a defendant's interests in avoiding the burdens of trial outweigh the benefits of awaiting a final decision has involved "some particular value of a high order." *Id.* at 352. Such values include enforcing the separation of powers, *Nixon*, 457 U.S. at 749, 758 (absolute immunity); enabling the efficiency of government and the initiative of its officials, *Mitchell*, 472 U.S. at 530 (qualified immunity); respecting a State's dignitary interests, *Puerto Rico Aqueduct*, 506 U.S. at 144–45 (Eleventh Amendment immunity); and mitigating the government's advantage over a criminal defendant, *Abney v. United States*, 431 U.S. 651, 660 (1977) (double jeopardy). Otherwise stated, "it is not mere avoidance of trial, but avoidance of a trial that would imperil a substantial public interest, that counts." *Will*, 546 U.S. at 353.

As the substantial public interest at stake in anti-SLAPP cases, Epic points to the need to protect its First Amendment rights. We readily acknowledge the importance of the First Amendment. And yet the avoidance of a trial that, Epic says, threatens its First Amendment rights does not satisfy the

stringent collateral-order doctrine. *See Mohawk Indus.*, 558 U.S. at 108–09 ("We routinely require litigants to wait until after final judgment to vindicate valuable rights . . . .").[6] The Supreme Court has instructed that, when, as here, the challenged order "resolved a *fact*-related dispute," rather than a "purely legal issue," the benefits of an immediate appeal are likely outweighed by the cost of disrupting the ordinary course of litigation—even if a substantial public interest is at stake. *Johnson*, 515 U.S. at 307, 313. This factual-versus-legal distinction derives from two Supreme Court decisions, *Mitchell* and *Johnson*, which both involved an appeal from the same class of orders: denials of a motion for summary judgment based on qualified immunity. Epic analogizes qualified-immunity denials to anti-SLAPP denials and so we turn to qualified-immunity cases.

*Mitchell* came first. In that case, the Court ruled that a district-court order denying a defendant's motion for summary judgment based on qualified immunity was immediately appealable under the collateral-order doctrine. *Mitchell*, 472 U.S. at 530. The dispute underlying the *Mitchell* appeal concerned a legal question: whether certain alleged facts, if true, would

---

[6] *See also, e.g.*, *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 426 (1985) (declining to apply collateral-order appellate jurisdiction to an order disqualifying counsel in a civil case); *Flanagan v. United States*, 465 U.S. 259, 260 (1984) (reaching the same result in a criminal case, notwithstanding the Sixth Amendment rights at stake); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1025 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2608 (2023) (reaching the same result in a Title VII action, even if First Amendment rights are implicated).

establish a violation of "clearly established" law. *Id.* at 528. After deciding that the defendant had satisfied the collateral-order doctrine's "effectively unreviewable" and "conclusive" requirements, the Court addressed the "separability" requirement. *Id.* at 527. The Court proclaimed that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated," reasoning in part that an "appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim." *Id.* at 527–28. Rather, "[a]ll it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Id.* at 528. Thus, the Court held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Id.* at 530.

*Johnson* came next. There, the Court refused to extend *Mitchell* to cover denials of qualified immunity based on sufficiency-of-the-evidence challenges. *Johnson*, 515 U.S. at 314–15. The Court noted that the district court's qualified-immunity order had gone beyond "the purely legal issue [of] what law was 'clearly established,'" *id.* at 313, and had "resolved a *fact*-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial," *id.* at 307.

The Court distinguished cases presenting "neat abstract issues of law," *id.* at 317 (citation omitted), like *Mitchell* (where the court treats the factual allegations as true) from cases presenting fact disputes and associated sufficiency-of-the-evidence challenges, *see id.* at 314–17 (citation omitted). And the Court observed that when "a defendant simply wants to appeal a district court's determination that the evidence is sufficient to permit a particular finding of fact after trial, it will often prove difficult to find any such 'separate' question—one that is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Id.* at 314 (citations omitted). Because the district court's denial of qualified immunity had turned on a sufficiency-of-the-evidence determination, the Court found "no separability" as required by the collateral-order doctrine. *Id.* at 315. And though the *Johnson* and *Mitchell* public-official defendants shared "a similar interest in avoiding trial," the Court determined that "considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." *Johnson*, 515 U.S. at 316–17.

With this factual-versus-legal distinction in mind, we next consider whether anti-SLAPP denials raise "purely legal" issues. *Mitchell*, 472 U.S. at 530.

**B.    Orders denying anti-SLAPP special motions to dismiss necessarily involve fact weighing and thus cannot be completely separate from the merits.**

Colorado's anti-SLAPP statute requires courts to "consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based" and evaluate whether "the plaintiff has established that there is a reasonable likelihood that [he] will prevail on the claim." § 13-20-1101(3)(a)–(b). So the underlying facts necessarily take center stage in any anti-SLAPP analysis.

This case illustrates the fact-driven nature of the analysis. To succeed on his defamation claim under Colorado law, Dr. Coomer has to prove: (1) a defamatory statement; (2) that was materially false; (3) concerning Dr. Coomer; (4) published to a third party; (5) with actual malice; and (6) that caused actual or special damages. *See Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993); *see also Brokers' Choice Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017). In deciding Epic's motion, the district court scrutinized Dr. Coomer's "submitted evidence" and "declarations" against each of these six elements, before concluding that Dr. Coomer was likely to succeed in proving the merits of his defamation claim. *Coomer*, 659 F. Supp. 3d at 1204.

For example, in analyzing the first element—a defamatory statement—the court ruled that Dr. Coomer had "submitted evidence tending to show [Epic] repeatedly endorsed Oltmann's accusation that Dr. Coomer committed

16

[the crimes of] fraud and treason," which is "per se" defamation under Colorado law. *Id.* (noting that under Colorado law, a statement is defamatory per se if it imputes a criminal offense, and that "[t]reason is a crime so infamous it is specifically mentioned in the federal constitution" (citations omitted)). Likewise, in considering the second element—material falsity—the court found that Dr. Coomer's pleadings and affidavits "contain[ed] substantial evidence tending to show the falsity of the various statements [Epic] made about him," including "evidence tending to show not only that the election fraud as alleged by Oltmann was technically impossible, but also that the claim of Dr. Coomer's involvement in the September conference call was supported by fabricated evidence." *Id.* The district court even considered, and rejected, Epic's asserted defense to Dr. Coomer's defamation claim—that one of the allegedly defamatory statements was "an unverifiable opinion (and thus not an assertion of fact) and therefore unactionable." *Id*. at 1205. The court meticulously considered the remaining four defamation elements, as well as the elements of Dr. Coomer's other two claims, before ruling that Dr. Coomer would likely succeed on the merits of each claim and denying Epic's special motion to dismiss. *Id.* at 1206–07.

At bottom, Epic seeks to appeal the district court's ruling that the record evidence suffices to support the district court's conclusion that Dr. Coomer has shown a likelihood of success on the merits of his claims. But as the Supreme Court has made clear, "if what is at issue . . . is nothing more than whether the

evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim." *Behrens v. Pelletier*, 516 U.S. 299, 303 (1996) (citations omitted). Given the fact-dependent nature of the anti-SLAPP analysis, and relying on *Johnson*, we conclude that we lack appellate jurisdiction to review the district court's order.

Moreover, appellate review here would infringe on a principal purpose of the separability requirement: preventing piecemeal appellate review. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 527 (1988); *Johnson*, 515 U.S. at 317 ("[T]he close connection between [sufficiency-of-the-evidence] issue[s] and the factual matter that will likely surface at trial means the appellate court . . . may well be faced with approximately the same factual issue again, after trial . . . [which] makes unwise use of appellate courts' time . . . ."). Mindful of this purpose, we have observed that the collateral-order doctrine ordinarily applies "only if an appellate court would probably not need to consider the merits a second time." *Kell v. Benzon*, 925 F.3d 448, 453 (10th Cir. 2019). Say we were to recognize appellate jurisdiction and affirm the district court's order, and on remand Dr. Coomer were to prove his claims at trial. Then, in a future appeal, we might be forced to decide the "actual merit" of Dr. Coomer's claims despite having already considered their "potential merit" now. *See id.* This is piecemeal litigation.

For these reasons, the collateral-order doctrine does not allow appeals from orders denying special motions to dismiss under Colorado's anti-SLAPP statute.

### C.    Anti-SLAPP Cases in Federal Appellate Courts

We agree with the reasoning of *Ernst v. Carrigan*, 814 F.3d 116, 117–18 (2d Cir. 2016), in which the Second Circuit analyzed the denial of a special motion to dismiss under Vermont's anti-SLAPP statute. The Vermont statute, like Colorado's, "instructs the court to consider the 'pleadings and supporting and opposing affidavits'" when deciding whether to grant a special motion. *Id.* at 120 (quoting Vt. Stat. Ann. tit. 12, § 1041(e)). Because such an "analysis is entangled in the facts," the court ruled that the denial of motions to dismiss under anti-SLAPP statutes are "not '*completely separate* from the merits' of a plaintiff's action," and thus are not immediately appealable under the collateral-order doctrine. *Id.* at 120–21 (*quoting Will*, 546 U.S. at 349). In so ruling, the court noted that anti-SLAPP statutes "have much in common with immunity statutes," but determined that, under *Johnson*, anti-SLAPP denials are not immediately appealable because they "turn on . . . fact-based determinations." *Id.* at 121.

This view is consistent with our decision in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018). There, we considered an interlocutory appeal in which the district court order had denied, on *Erie* grounds, an anti-SLAPP motion to dismiss. *Id.* at 661. The district court had

concluded that "New Mexico's Anti-SLAPP statute is a procedural provision that does not apply in the courts of the United States." *Id.* at 662 (quotation omitted). We approved of appellate jurisdiction to consider the *Erie* ruling under the collateral-order doctrine. *Id.* at 666–68. Particularly, we concluded that the separability requirement was met because the issue of "whether federal courts can apply the New Mexico anti-SLAPP statute" is an "abstract question of federal law" that had "nothing to do with the particular facts in [that] case" and depended "on considerations entirely external to the dispute between Plaintiffs and Defendants." *Id.* at 665.

But we emphasized that it would be "an entirely different matter" for a district court to "consider a New Mexico anti-SLAPP motion, apply the New Mexico anti-SLAPP statute, and deny the motion under that statute." *Id.* This latter scenario, we explained, would require the district court to "determine whether the special motion to dismiss is frivolous or available on its own terms, as well as whether or not to grant it." *Id.* Such a "determination[]," we observed, would "necessarily turn on the merits of the lawsuit." *Id.* Though the latter scenario was not before us in that case, it is now. And so we follow the lead of *Los Lobos* in concluding that district-court orders denying anti-SLAPP motions brought under Colorado's statute "necessarily turn on the merits of the lawsuit." *Id.*

We recognize that three Circuits have ruled that denials of anti-SLAPP motions to dismiss are immediately appealable under the collateral-order

doctrine. *Batzel*, 333 F.3d at 1019 (California's anti-SLAPP statute); *Henry*, 566 F.3d at 180–81 (Louisiana's anti-SLAPP statute); *Franchini v. Inv's Bus. Daily, Inc.*, 981 F.3d 1, 6–8 (1st Cir. 2020) (Maine's anti-SLAPP statute). But unlike the Second Circuit in *Ernst*, these courts did not consider the Supreme Court's pronouncements in *Mitchell* and *Johnson* on the collateral-order doctrine's separability requirement. *Batzel*, 333 F.3d at 1025–26 (deciding the separability issue without acknowledging *Johnson*); *Henry*, 566 F.3d at 174–75 (discussing *Mitchell* but not *Johnson*); *Franchini*, 981 F.3d at 7 (discussing neither case).

We also note that the Ninth Circuit, whose *Batzel* opinion the First and Fifth Circuit tracked, *see Henry*, 566 F.3d at 175; *Franchini*, 981 F.3d at 7 n.6, has recently granted en banc review to "re-consider (1) whether California's anti-SLAPP statute applies in federal court under *Erie*, and (2) whether the denial of a motion to strike under California's anti-SLAPP statute is immediately appealable under the collateral order doctrine." Order, *Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305 (9th Cir. Feb. 1, 2024), ECF No. 89; *Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305, 2024 WL 189137, at *1 (9th Cir. Jan. 18, 2024) (granting rehearing en banc); *see also*, *Martinez v. ZoomInfo Techs. Inc.*, 82 F.4th 785, 794 (9th Cir. 2023) (McKeown, J., concurring) (questioning "the propriety of our court reviewing on interlocutory appeal the denials of anti-SLAPP motions to strike."), *reh'g granted*, 2024 WL 189137

(9th Cir. 2024).[7] Whatever the outcome of that en banc review, we decline to follow *Batzel* and *Henry*, and instead "prefer to follow the Supreme Court's holding in *Johnson*." *Ernst*, 814 F.3d at 121.

## CONCLUSION

For these reasons, we grant Dr. Coomer's motion to dismiss Epic's appeal for lack of appellate jurisdiction.

---

[7] About six weeks after the Ninth Circuit granted rehearing en banc, the parties filed a Notice of Memorandum of Understanding requesting that the Ninth Circuit continue the en banc hearing because the parties had filed a proposed settlement agreement in a related case. The court vacated the oral argument scheduled on March 19, 2024, and directed the parties to file a status report within sixty (60) days.